Okay, I'm going to check if you can handle it. That's my duty. Okay. Okay. Thank you. I love you. I'm sorry. I love you very much. No problem. So I'll give you a call as soon as I can. Okay. Thanks. Bye-bye.   Thank you. Bye-bye. Bye-bye. Bye-bye. Bye-bye. Bye-bye. Okay, there's more than that. There's more than that. Let's just go through them. I think that we all agree on the standards that you can't abuse or use excessive force on a child. That's clearly. So then here's the four or five things I have. One, you've named, which is walking on the pavement four times. Then there are two allegations that do concern me because of the way they're pled, and we have to take it as pled, and that is repeated slapping of the child and having them hit their own head and slamming the child into a chair. So my question is, if you took those, and we don't know what happened, okay, and we recognize there will be conflicting testimony. But my question would be, on those two points, why that wouldn't, as pled, rise to the level of a Fourth Amendment violation? We have a unique situation here in that they went through an extensive administrative hearing, and we've submitted to you the findings of the hearing officer and, at best, what they have and what the hearing officer found after listening to all the testimony, that perhaps the teacher didn't employ best practices. And what you have here, and if you read their complaint, and if you look at the hearing officer's decision and the SRO officer's decision, state reviewing officer's decision, what happened was the teacher grabbed the child's hand, and when the child was abusing himself, was self-stimulating behavior, hitting himself, the teacher grabbed the child's hand and said, don't do this. That's what's involved there. It's not slapping and beating a child. It's not taping a child's head to a tree. Can we just stand just a second? Because we're really ñ there's a very mixed-up case, the way it's all merged. And you've pointed that out at the beginning. It's all merged together with ñ so we've spent a lot of time trying to understand it. Let me just ask you if those conflicting views of what happened, do we not have to take what's pled? That's my question, which is, and I'm going to the complaint about the repeated slapping and slamming. So how do we, in your view, how does that complaint allegation fit with the administrative hearing in terms of our burden to try to review it? Well, this came up. This came up on an appeal from the administrative hearing. It carries with it that record. We have a finding from a hearing officer and then subsequent review by the state reviewing officer. So you do have an independent party taking a look at these facts. No, I think ñ excuse me. I think what Judge McKeown is asking you, and she can certainly correct me if I'm wrong, but it's certainly something I would like to know your view on. Are we bound by the administrative officer's findings, or do we look at this de novo? In other words, you have argued to us, well, this is what really happened as a result of the administrative hearing officer's findings. But their complaint says something quite different. Don't we have to rely on their complaint and not the administrative officer's findings? Are we ñ you're suggesting we're bound by the administrative officer's findings? I think you are bound by those factual findings on these allegations. This is a unique case. This is a likely case. Okay. What's the authority for that? They've taken a shot at this. No, no, no. That's ñ that's ñ Under IDEA. This is my question, okay? We're trying to understand this. We're trying to have you help us understand it. What is the authority that we would take as binding the administrative officer's findings? It comes out of the IDEA, and they had ñ they introduced these ñ But we're talking about a Fourth Amendment violation. And I will ñ I will confess to you there is no case on point that has addressed this issue in this context. And the problem you have is they come out of the IDEA. They took a shot at these allegations in the IDEA process. They lost. They then appealed that IDEA decision, and then they tacked on a 1983 claim. In ñ if you're looking at this under traditional ñ in a traditional analysis, you would have to take what they pled as true. I'll concede that. Okay. Okay? You would have to take ñ I'm sorry. The microphones aren't working. Keep proceeding. I'm sorry. The microphones are on. All right. Can you turn up your speaker? We can hear you fine. All right. Thank you, Kwame. You would have to take their ñ their allegations as true as it relates to the conduct vis-a-vis the child. What that points up, though, is another issue that I want to address. And you have the teacher in the classroom who is the one who supposedly engaged in this conduct, which we dispute, as you know. But then you have a host of allegations against administrators that were not party to this conduct. And as to those people, I don't think there's any question but that they should be granted qualified immunity here. And the basis for that ñ the basis for their claim against the administrators, as best I can tell from this 200-and-some-odd, you know, paragraph complaint that is confusing and contorted at best, is that these administrators somehow should be held liable because they didn't comply with a State law reporting statute dealing with aversive interventions. Well, I think there's that. I think it's the blind-eye argument, as near as I can tell it. But I'm not very persuaded that we import those Nevada statutes. So let's leave that. Maybe my colleagues will disagree, but that seems to be not properly in this case, actually, that they should claim that. But you might ñ I'm going to give you a little extra time on rebuttal. But your time is ñ you might want to save it. Thank you. May it please the Court, counsel. My name is Niels Pearson. I'm here on behalf of the appellee's preschooler, too, and the parent, Jane Rowe. Let me begin by stating that from the outset, the actual ruling of Judge Hunt in this case quoted ñ Before we get to his ruling, answer this question, the same question I asked Mr. Ferrario. Are you pursuing a 1983 claim based upon a violation of the IDEA? In conjunction with a violation of the Fourth and Fourteenth Amendments. What does that mean? That means, as Judge Hunt ruled, that the acts support a violation of the IDEA if, in fact, it's incorporated, as he found under 1983, and also a constitutional violation of the Fourth and Fourteenth Amendments. Could you just explain to me ñ I mean, IDEA would give you ñ if you were to win, it would give you a compensatory education, correct? Correct. And it would give you attorney's fees, correct? Correct. It wouldn't give you punitive damages? No, except ñ What would 1983 give you? Well, 1983, if in fact ñ and there's a split of circuits, and, of course, there's the Emma Easton case and the Goleta case within the circuit, but not at this level, where the ñ basically, the Third Circuit has found, under the Metula case, which is cited by Judge Hunt, that Section 1415L, actually, when the Congress amended IDEA in 1986, meant to allow not only attorney's fees in effectively overruling Smith v. Robinson, but also would allow substantive recovery under 1983. Now, there's a controversy in the circuits. It hasn't been decided by the ñ There's a line of cases that says where you have a ñ this is from the Supreme Court ñ where you have a comprehensive remedy scheme, for instance, such as in Social Security appeals, you don't get 1983 actions. Isn't IDEA provide a comprehensive remedy? Yes, but that is really counteracted by the Franklin presumption, basically, that the Federal courts have a power to adequately provide remedies as well. So there are countering arguments on both sides, and so you really have to go beyond the legislative history, and that's why the circuits have been split. Well, let me ask you this. This is what I have some trouble with on the qualified immunity. The Fourth Amendment, you know, is traditional analysis, and we've talked about that with the school districts council. When you get qualified immunity, you don't ñ you're not really ñ you're getting immunity from damages or a claim in which, you know, there's ñ there would be a constitutional violation, but a reasonable officer or individual would believe that ñ would not believe or understand that there was a violation. How does that work with IDEA? Because it ñ to me, your qualified immunity is from conduct, not from some statute. So how does that fit here? In two ways it fits into this. Directly, the way it fits in is, is that there is a requirement under Nevada law and under the IDEA, and Nevada has the Nevada Administrative Code that follows up in the IDEA statute, that you don't do negative reinforcements, that you don't, in effect, however you want to characterize this, there's no ñ But how does the Nevada statute get imported into a Federal claim? No. And I'm not even reaching ñ But I'm just saying, forget Nevada, because we're talking about 1983. So forget the Nevada statute. If you have a ñ you might have a claim on that, but I don't really think it's in this Court. Here's the way it gets into the IDEA, I believe, and that's the cases we cited, Columbia v. Gill and the College of Dartmouth case, that the IDEA defines FAPE as meeting both the Federal procedural standards under the IDEA, but also incorporates by reference State standards. And those State standards, in this case, fit hand-in-glove with the Federal standards. So it's our argument that in passing a higher State standard, and that's the holding of those cases, that the Federal courts have the power to enforce those higher State standards. And here's the Aversive Intervention Act. Well, aren't you disagreed with that analysis, that somehow the State standards are imported into the Federal system? Do we even get the qualified immunity on the IDEA claim and the IDEA conduct? I think you do, because if, in fact, the standards ñ and it's just sort of a no-brainer that you do not use negative interventions on autistic disabled children. That is the state of the art that was the founding ñ even the finding of a procedural violation, in this case, of the failure to have a positive behavioral plan for this particular child. And we want to appeal that. We won on that issue. So you get to the issue of ñ So what do you ñ let's just say, what do you want out of the IDEA? Do you want damages against ñ damages above and beyond compensatory education against these individuals and the school district? Yes. For violation ñ a significant violation of the IDEA in the very core of the IDEA is, is that parents should be notified of what is happening to their children as participatory in the IDEA process of knowing and, in fact, developing an individual education plan. What's clearly alleged in this case, and I think the proof is uncontradictory ñ Well, let's try to understand it as a practical matter. I mean, we have a lot of IDEA cases. Right. But they really usually involve whether there's compliance with the IDEA, that sort of thing, and whether FAPE has been met. You've had administrative hearing. You've had your complaints with the district. So you want to basically get damages because you think they're not complying with the notice requirements? It's more than that. They're not complying with what is clearly not appealed. That is, is notifying the parents of what is happening with their child, that there were negative reinforcements slapping them. Do you want damages for that, or do you want a declaratory judgment and injunction? Both. And we think that IDEA is just a disjunctive way. And the reason why we're here today, and I think it's very clear from the threshold question asked of the appellant, is it's a disjunctive ruling by the Court. There's Fourth and Fourteenth Amendment violations. The Court only also found the IDEA was clearly established and that it was reasonable to believe that everyone involved, the individual defendants involved in this case, knew that it was wrong that this violation occurred, namely negative reinforcements. And that's the best case scenario. I can certainly understand. I don't know whether I agree with it. I can certainly understand where you're going with your 1983 claim with respect to seeking damages for slapping the child and doing those kinds of things. Those are traditional 1983 types of damages in the appropriate case. But you're seeking constitutional damages for their failure to notify? The statute, that's a constitutional violation? No. I believe the cases that have incorporated the IDEA have held that it is statutorily a remedial violation that is read into the amendment at 1415L in 1985 by Congress. That's what the cases say. That's what Judge Hunt says following the Emma Easton and the Goleta ruling and other district cases. So your 1983 claim is based on a Federal statutory violation in your view? Correct. And a constitutional violation? And the Fourth and Fourteenth Amendment as well. Could have been clearer in the pleadings, I can tell you that, if I may be respectful. And I accept that criticism. The pleadings were by stating them and merely incorporating by reference. But it's quite clear from the decision that was made and the briefs which we put in the supplemental points that these were issues squarely before Judge Hunt. Let me ask you another specific question. I mean, these are difficult cases because, you know, they involve children. You know, in this case, a child with some very significant issues that, you know, are not best resolved in the courts, as you know, because that's not our expertise. And we were experts in 1983. But I do look at some of the allegations. For example, Judge Ezra mentioned slapping and slamming. Those are two that are fairly tangible. But the fact that a child might have bruising, if it's not linked up with anything, how could that rise to the level of a violation? Because, you know, people get bruising all the time for different things. I mean, you bump into this bench and you can get bruised. So bruising or you could get slapped and you could get a bruise. It could come in different ways. But how, just alleging bruising, would that claim fall within a constitutional violation? And that's a very good question, because let me put it this way. We're dealing with nonverbal and, as Judge Hunt noted, very vulnerable children who cannot express the hurt or even defend themselves, especially a 4-year-old at the time these events occurred. And we have alleged that the bruising is contemporaneous with the reports that came out at the hearing. And by no ---- But it's contemporaneous with another child. Correct. And that leads to my next point. We have alleged and directly alleged, although it's not in Judge Hunt's order, but it's clearly within the complaint, that there was extreme emotional upset. And at page, allegation number 108, that there was a sudden dramatic change in this child becoming kicking, biting, scratching, a violence in a proclivity to violence that remains today. And we allege those emotional injuries, those behavioral changes, are linked directly with this abusive conduct. You allege a pattern of misconduct. That's what you're alleging. Correct. And let me just answer that. I think there isn't any confusion in this sense. We have alleged that a hostile environment was in this classroom, so the allegations of what Preschooler 2 observed were happening to Preschooler 1 and even to third parties, as we allege. Thank you. You have 25 seconds, but I'm actually going to give you a minute, because you can't say much in 25 seconds. I'm glad you mentioned Preschooler 1. Again, that case has been adjudicated, and we actually took depositions of his supposed experts, and they've been stricken from the case by Judge Hicks. You asked some very good questions, and Mr. Pearson was circular. What they're trying to do is import the state reporting statute into IDA to buttress a 1983 claim. I don't think that's appropriate. And we cited cases, especially the case from Tennessee, where absent has expressed a legislative declaration, you can't do that. So, at best, what should survive here is a Fourth Amendment claim, okay, if you wanted to allow that based upon, I guess, physically grabbing a child and putting them in a chair. Now, we have the Neal v. Fulton County Board of Education case that talks about slapping a child, and if you have a minor injury suffered by a student during the administration of traditional corporal punishment, it rarely, if ever, will be the kind of injury that will support a Federal due process claim. But we have a different individual or child here than a typical child. Yes, you do. But you also have to look through the smoke screen and the confusion and the haze that they put in their pleading. And I'm glad he consented that this pleading was confounding at best. They tried to bootstrap things. You don't need to import an additional remedy into the IDEA. It's a comprehensive scheme, and there should be no 1983 action for a violation of the IDEA. Okay. And you should also, I think. Your time has expired. Excuse me? Your time has expired. Let me just ask one last question, which calls for a yes or no answer. Did this case go through the Ninth Circuit mediation program? Yes, it did. Thank you. Thank you for your arguments. Both counsel, it is a difficult case, as you both know, and complicated, as you both acknowledged. The case of Preschooler v. Davis is submitted. The next case for argument this morning is United States v. Canis.
judges: Hug, McKeown, Ezra